FILED
2019 Jan-07 PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LARRY DEAN TACKETT,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:18-CV-8009-VEH** |
| ) | **(1:16-CR-00187-VEH-JEO-1)** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

Petitioner Larry Dean Tackett has challenged his conviction and sentence by his Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 1, filed Feb. 28, 2018),[1] as amended by his Amended Motion (doc. 2, filed Mar. 28, 2018).[2,3] The Government has responded to the Petition. (*See* doc. 5). Being familiar with the issues raised, the Court determines that an evidentiary hearing is not required. Accordingly, the matter is

---

[1] The Motion was filed into the record on CM/ECF on March 8, 2018. (*See* Docket Sheet). However, under the prison mailbox rule, the Motion is deemed filed as of the date it was placed in prison mail, to wit, February 28, 2018. (*See* doc. 1 at 13).

[2] The Amended Motion was filed into the record on CM/ECF on April 3, 2018. (*See* Docket Sheet). However, under the prison mailbox rule, the Amended Motion is deemed filed as of the date it was placed in prison mail, to wit, March 28, 2018. (*See* doc. 2 at 1).

[3] The Court will hereafter refer to the Motion and the Amended Motion collectively as the Petition.

ripe for determination. For the reasons set out below, the Petition is due to be **DENIED**.

I. **BACKGROUND**

On June 29, 2016, the Grand Jury returned an Indictment (Criminal Case No. 1:16-CR-00187-VEH-JEO-1, doc. 1) charging Petitioner with: (1) using a cellular telephone to "attempt to knowingly persuade, induce, and entice an individual, known to the defendant as a 14-year old female, who had not obtained 18 years of age, to engage in sexual activity for which the defendant can be charged with a criminal offense, to wit: Rape in the Second Degree (Ala. Code § 13A-6-62); and Sexual Abuse in the Second Degree (Ala. Code § 13A-6-67), in violation of Title 18, United States Code, Section 2422(b)" (Count One); and (2) "attempt[ing] to use, persuade, induce, entice, and coerce a person known to the defendant as a 14-year old female, who had not obtained 18 years of age, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported using any means and facility of interstate and foreign commerce, including by computer, in violation of Title 18, United States Code, Sections 2251(a) and (e)" (Count Two). (Criminal Case doc. 1 at 1-2).

Petitioner entered a written Plea Agreement (Criminal Case doc. 29, filed

Feb. 7, 2017) and pled guilty to Count Two of the Indictment. (*See id.* at 1, 19-20). The Court accepted the guilty plea, and, on May 10, 2017, a Judgment of Conviction (Criminal Case doc. 38) was entered sentencing Petitioner to the statutory mandatory minimum term of one hundred and eighty (180) months imprisonment. (*Id.* at 1-2). In the Judgment of Conviction, Petitioner was expressly given "credit for all time in custody from and including May 4, 2016." (*Id*. at 2). Count One of the Indictment was dismissed pursuant to the Plea Agreement. (*See id.* at 1). Petitioner did not file a direct appeal. (*See* Criminal Case Docket Sheet).

On February 28, 2018, Petitioner filed a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1). Petitioner amended that motion on March 28, 2018. (Doc. 2). He raises four issues. The first is that "[t]he trial court was without jurisdiction to charge the offenses in the District of Alabama." (Doc. 1 at 4; doc. 2 at 3-5). The second is that he "received ineffective assistance of counsel." (Doc. 1 at 6; doc. 2 at 5). The third is that "[t]he sentence imposed unduely [sic] exaggerates the criminality of the alleged offense" (doc. 1 at 7) and that "[t]he sentence imposed is unduely [sic] exaggerated." (Doc. 2 at 5-6). The fourth is that he is entitled to but has not received approximately 90 days of jail credit. (Doc. 2 at 1, 6).

## II. STANDARD OF REVIEW

### A. General Standard

Collateral attack is not a substitute for direct appeal. Accordingly, Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). To obtain this relief on collateral review, however, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal." *See United States v. Frady,* 456 U.S. 152, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982) (footnote omitted) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

### B. Hearing

Under Section 2255, unless "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Eleventh Circuit Court of Appeals has explained that "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan,* 550 U.S. 465, 474, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007); *see also Aron v. United States,* 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous" (citing *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989))).

### III. DISCUSSION

#### A. Ground #1: Jurisdictional Challenge

##### 1. **<u>Petitioner's Contention</u>**

Petitioner challenges his conviction and sentence on the basis that his criminal conduct did not occur in the Northern District of Alabama. (*See* doc. 1 at

5

4 ("[Petitioner] committed nothing unlawful in the State of Alabama[] . . . . If [Petitioner] committed any crime whatsoever, it was committed within the State of Kentucky, <u>not</u> Alabama, leaving Alabama without jurisdiction to charge or [i]ndict [Petitioner].")) (s*ee also id.* at 6 ("I did not . . . violate the law by any means in the State of Alabama, but [I] was coerced to drive to the State of Alkabama [sic] by the [p]olice."); doc. 2 at 3 ("Review of the two count Indictment [reveals that it] is clearly defective, which in part alleges that the overt acts of [Petitioner] were committed within the jurisdictions of <u>Kentucky</u>, <u>Tennessee</u>, the Northern District of Alabama, and <u>elsewhere</u>.")).

### 2. **Factual Basis for Guilty Plea**

In his written Plea Agreement, Petitioner agreed that the following facts are substantially correct:

> The defendant, LARRY DEAN TACKETT, is a native and citizen of the United States, born in or about January 1961. On May 3, 2016, the Ashland Police Department received a report that an adult male had taken over a 12-year-old female's Facebook account (the "Account"). There is no evidence that TACKETT previously knew the 12-year-old female. The adult male had been contacting minor females in the Ashland, Alabama area. On April 4, 2016, the User of the Account, TACKETT, also updated the profile picture to a picture of an adult male wearing glasses and a baseball hat.
>
> An Ashland Police Department Investigator subsequently created a fictitious Facebook account under the name of TIARA MARTIN, a 14-year-old female from Ashland, Alabama. MARTIN

initiated the friend request to TACKETT. TACKETT initiated a chat conversation with MARTIN via Facebook Messenger at approximately 1:32pm. The Investigator, posing as MARTIN, began communicating with TACKETT. At approximately 1:34pm May 3, 2016, TACKETT updated the Account "Nickname" to LARRY TACKETT.

Throughout the course of the conversation, TACKETT, using a cellular phone, ASUS Zenfone 2E Z00D, International Mobile Equipment Identity Number (IMEI#) – 014327003185478, stated that he was in love with MARTIN. MARTIN continually explained that she was 14 years old and TACKETT consistently requested pictures of MARTIN's "14 year old pussy" as he had never seen one before. At approximately 1:55pm, TACKETT sent MARTIN a picture of an adult male's penis. TACKETT further requested pictures from MARTIN and stated at approximately 2:20pm, "I love you too baby and yes I want you to be my wife I want you to have my kids but I want to also see your pussy baby found that camera and let me see it my dick is so hard for you right now I'm going to put it in your tight little pussy right now baby I want you to suck my dick good too honey but I eat your pussy".

At approximately 2:22pm TACKETT stated, "No baby I promise you know I will come and get you I just don't want to get in trouble but I guess I will come and get you and bring you to Kentucky I just want to see your pretty little pussy I know it is so beautiful and it is so tight please baby I will come and get you we just have to get everything the directions right". TACKETT then stated at approximately 3:12pm, "Baby I need that address how do I do this on my phone I'm going to need help honey please do not let me get lost". As the conversation continued, TACKETT left Kentucky to come to Alabama to meet MARTIN. TACKETT continued to update MARTIN on his location throughout his trip from Kentucky to Alabama. Some of the updates TACKETT sent are as follows:

- "Baby are you there talk to me honey I'm on the road" (4:27pm)

- "I am on the road now baby I just left Winchester" (4:35pm)

- "I'm a hundred and forty miles from Knoxville" (5:13pm)

- "I am about 50 miles from Knoxville" (6:31pm)

- "11 miles from Knoxville" (7:23pm)

- "I'm coming by a little town called Calgary" (9:14pm)

- "I am ready to see you I am ready to hold you and squeeze you and kiss you make love to you Chattanooga State Line" (9:15pm)

- "I just crossed the Chattahoochee River" (11:13pm)

- "Baby I'm in a little town called Douglas right now" (11:40pm)

- "Port Allen outlet mall baby" (05/04/2016, 12:35am)

- "Yes just now at the Alabama state line" (05/04/2016, 12:40am)

- "I'm going to enjoy that baby and I will teach you everything how to suck dick good out of water come out of the fog everywhere, I passed exit 210 back there" (05/04/2016, 12:42am)

- "You have to hurry my phone is dying it's done that twice to me" (05/04/2016, 1:21am)

- "I'm in Danville right now coming into it I'm in the middle of it" (05/04/2016, 1:49am)

- "Yes and my phone keeps dying...Ashland 5 Mile" (05/04/2016, 1:50am)

Along with these timely updates of TACKETT's location, TACKETT was also requesting for MARTIN to assist with directions. MARTIN helped TACKETT with the driving directions,

8

eventually leading him to a location where the Ashland Police Department arrested TACKETT at approximately 2:09am on May 4, 2016. After his arrest, TACKETT was given his Miranda rights and waived those rights. After executing a written waiver of his rights, TACKETT signed a written statement admitting he drove from Kentucky to Alabama to have sex with a 14- year-old girl.

Pursuant to the aforementioned facts, the defendant did use a facility and means of interstate and foreign commerce, that is the internet and a cellular telephone, to attempt to use, persuade, induce, entice, and coerce an individual, known to the defendant as a 14-year-old girl, who had not obtained the age of 18 years, to engage in sexually explicit conduct, including but not limited to, actual or simulated sexual intercourse, actual or simulated masturbation, and the lascivious exhibition of the genitals and pubic area of a person, for the purpose of producing a visual depiction of such conduct.[] At the time, the defendant was located in Kentucky and the individual he believed to be a 14-year-old girl was located in Alabama. All or parts of the aforementioned digital media, the ASUS ZenFone 2E Z00D, International Mobile Equipment Identity Number (IMEI#) – 014327003185478 were made outside of the United States.

(Criminal Case doc. 29 at 2-6).

### 3.   Analysis

The Government interpreted this issue as a challenge to this Court's subject matter jurisdiction. (*See* doc. 5 at 3 ("Because [Petitioner's] criminal case charged him with offenses against the laws of the United States . . . the Court had authority to hear it.")). "Subject-matter jurisdiction defines the court's authority to hear a given type of case...." *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (emphasis added) (quoting *United States v. Morton*, 467 U.S. 822, 828, 104

S. Ct. 2769, 2773, 81 L. Ed. 2d 680 (1984)). And, as the Government correctly points out, this Court, like all other federal district courts, has "original jurisdiction, exclusive of the courts of the [s]tates, of all offenses against the laws of the United States." 18 U.S.C. § 3231; *see also United States v. Roberts,* 618 F.2d 530, 537 (9th Cir. 1980) (explaining the difference between subject matter jurisdiction and venue and stating that "[e]very federal district court has jurisdiction over the subject matter" of an offense against the laws of the United States). Thus, Petitioner's first issue, construed as a challenge to this Court's subject matter jurisdiction, is due to be denied.

Alternatively, liberally construing *pro se* Petitioner's first issue not as a challenge to the Court's authority (that is, its subject matter jurisdiction), but instead as a challenge to the propriety of this Court's exercise of that authority (that is, venue), then that challenge has been waived because it was not raised before Petitioner's conviction. This is because, although a criminal defendant has a constitutional right to be tried in the jurisdiction where the crime was committed, this "constitutional venue" right, like other venue rights, can be waived. *United States v. Roberts*, 308 F.3d 1147, 1151-52 (11th Cir. 2002) ("A defendant may waive such right, however, by failing to raise a venue objection prior to trial."

(citing *United States v. Dabbs*, 134 F.3d 1071, 1078 (11th Cir. 1998)))[4]

## B. Ground #2: Petitioner's Ineffective Assistance Claim

Petitioner's ineffective assistance claim is all based on two incorrect premises. First is his assertion that this Court lacked subject matter jurisdiction and therefore his attorney was ineffective for not challenging his Indictment on that basis. (*See* doc. 1 at 6; doc. 2 at 5). However, as explained above, this Court indeed had subject matter jurisdiction. A challenge to this Court's jurisdiction would have failed.[5] Accordingly, defense counsel could not be ineffective for failing to raise such a meritless challenge.

Second, Petitioner asserts that because he was convicted of attempted production of child pornography, as opposed to having been convicted of "completed" production of child pornography, his sentence should have been "one half of the sentence of the completed offense of Production of Child

---

[4] It is clear from the facts admitted in the Plea Agreement that Petitioner, in attempting to create child pornography, traveled from Kentucky, through Tennessee, and into the Northern District of Alabama. (*See* Criminal Case doc. 29 at 2-6). Thus, he could be prosecuted in any of these venues. This is because "[v]enue may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location." *United States v. Thompson*, 896 F.3d 155, 171 (2d Cir. 2018) (alteration in original) (quoting *United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016) (internal quotation marks omitted)) (citing *United States v. Holcombe*, 883 F.3d 12, 15 (2d Cir. 2018)).

[5] Similarly, a challenge to venue in the Northern District of Alabama would also have been without merit.

Pornography." (Doc. 2 at 5).⁶ He asserts that his counsel was ineffective because "he allowed [Petitioner] to receive the sentence for a completed crime, rather than the attempted offense." (*Id.*) However, Congress made no distinction between the sentence for the "completed" crime of production of child pornography and the crime of attempted production of child pornography. In relevant part, the statute provides that "(e) [a]ny individual who violates, or <u>attempts</u> or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years[] . . . . " 18 U.S.C. § 2251(e) (emphasis added) (boldface omitted). Additionally, as he acknowledged in his Plea Agreement, Petitioner knew that his conviction carried a mandatory minimum sentence of fifteen years. (*See* Criminal Case doc. 29 at 2). Petitioner's claim of ineffective assistance based upon his receipt of the statutory mandatory minimum sentence for attempted production of child pornography is due to be denied.

### C. Ground #3: Petitioner's Excessive Sentence Claim

---

⁶ Bizarrely, the Government contends that Petitioner was neither charged with nor convicted of attempted production of child pornography. (*See* doc. 5 at 5-6). Government counsel argues that Petitioner was charged with and convicted of "Sexual Exploitation of a Child pursuant to 18 U.S.C. §§ 2251(a) and (e)." (*Id.* at 5) (citing Criminal Case doc. 1). However, although Section 2251 is entitled Sexual Exploitation of Children, the exploitation prohibited is production (or attempted production), possession, or receipt of child pornography. *See* 18 U.S.C. § 2251. The Government goes on to argue that the conduct Petitioner admitted to in his Plea Agreement was more than an attempted offense. (*See* doc. 5 at 6). But it was not, at least as to the charges in the Indictment. As Petitioner asserts, he was charged in Count Two with and was convicted of attempted production of child pornography.

Petitioner next argues that his sentence "unduely [sic] exaggerates the criminality of the alleged offense[] [that] [he] stands convicted of" (doc. 1 at 7) and that "[t]he sentence imposed is unduely [sic] exaggerated." (Doc. 2 at 5-6). As stated above, the sentence imposed was the statutory mandatory minimum for the crime of conviction. Thus, in his Plea Agreement, Petitioner has waived any non-constitutionally based challenge to his sentence.

The only constitutionally based challenge that the Court can perceive here is one based on the Eighth Amendment to the United States Constitution. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In determining whether a sentence for a period of years constitutes cruel or unusual punishment (rather than the manner of punishment), the Supreme Court has recognized that "[t]he Eighth Amendment[] . . . contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (internal quotation marks omitted) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97, 111 S. Ct. 2680, 2702-03, 115 L. Ed. 2d. 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment)) (citing *Weems v. United States*, 217 U.S. 349, 371, 30 S. Ct. 544, 550-51, 54 L. Ed. 793 (1910); *Robinson*

*v. California*, 370 U.S. 660, 667, 82 S. Ct. 1417, 1420-21, 8 L. Ed. 2d 758 (1962)).

If Petitioner is asserting that the statutory mandatory minimum sentence is per se a violation of the Eighth Amendment's prohibition on cruel and unusual punishment, his claim fails. This is because, in non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle. *Harmelin*, 501 U.S. at 996-97 (Kennedy, J., concurring in part and concurring in the judgment).

If Petitioner is not asserting a per se violation, but rather is asserting that such sentence is cruel and unusual as applied to him, his claim still fails. The Supreme Court has acknowledged that it has "not established a clear or consistent path for courts to follow" when faced with a proportionality question. *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S. Ct. 1166, 1173, 155 L. Ed. 2d 144 (2003) (citing *Ewing*, 538 U.S. at 20-23). However, that Court has made clear that the Eighth Amendment "does not require strict proportionality between crime and sentence[,] . . . . forbid[ding] only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 23 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment)). Thus, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77.

To determine if a sentence violates the Eighth Amendment, this Court first compares the crime committed to the sentence imposed and determines whether any disparity creates an inference of gross disproportionality. *See United States v. Farley*, 607 F.3d 1294, 1344 (11th Cir. 2010). Petitioner bears the burden of making the threshold showing of gross disproportionality. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (citing *United States v. Raad*, 406 F.3d 1322, 1324 n.4 (11th Cir. 2005)).

Here, Petitioner has wholly failed to demonstrate this his sentence is grossly disproportionate. And a review of cases in this Circuit reveals that it is not. *See Johnson*, 451 F.3d at 1242-44 (finding, in a case of producing and distributing child pornography, that the 140-year sentence that was within the statutory limits and less than the life sentence prescribed by the Guidelines did not trigger the need for proportionality review); *see also United States v. Guite*, 652 F. App'x 829, 834-35 (11th Cir. 2016) (unpublished) ("[W]e have regularly found life sentences in child sex crimes do not violate the Eighth Amendment."), *cert. denied*, 137 S. Ct. 1108, 197 L. Ed. 2d 211 (2017).

### D.  Ground #4: Jail Credit

To the extent Petitioner requests that this Court order the Bureau of Prisons to award him certain jail credit for time served in state custody, the Court notes

that, in the Judgment of Conviction, Petitioner was expressly given "credit for all time in custody from and including May 4, 2016." (Criminal Case doc. 38 at 2). In any event, "the Attorney General, acting through the Bureau of Prisons, and not this Court, is responsible for computing any sentencing credits available to [Petitioner]." *United States v. Buckhault*, No. 98-146, 2009 WL 385584, at *1 (S.D. Ala. Feb. 12, 2009) (citing *United States v. Williams*, 425 F.3d 987, 990 (11th Cir. 2005)); *see Travieso v. Fed. Bureau of Prisons, Warden*, 217 F. App'x 933, 935 (11th Cir. 2007) ("[T]he Supreme Court has held that the Attorney General, through the Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing." (citing *United States v. Wilson*, 503 U.S. 329, 333-35, 112 S. Ct. 1351, 1354-55, 117 L. Ed. 2d 593 (1992))). Further, "[t]he . . . Bureau of Prisons, not this Court, has exclusive authority to determine whether a defendant should receive credit for time spent in custody before the federal sentence commences." *United States v. Nettles*, No. 09-14, 2010 WL 5421340, at *1 (S.D. Ala. Dec. 27, 2010) (citing 18 U.S.C. § 3585; *Williams*, 425 F.3d at 990; *Galloway v. Fisher*, No. 08-82, 2008 WL 4057803, at *3 (N.D. Fla. Aug. 27, 2008)). Therefore, Petitioner must first exhaust the administrative procedures provided by the Bureau of Prisons for requesting sentence credits before seeking review in this Court. *See, e.g.*, *United States v.*

*Flanagan*, 868 F.2d 1544, 1546 (11th Cir. 1989) ("[A] federal prisoner dissatisfied with the computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence." (citing, *inter alia*, *United States v. Morgan*, 425 F.2d 1388, 1390 (5th Cir. 1970)[7])).

The record before the Court does not indicate that Petitioner has pursued or exhausted his administrative remedies. Accordingly, this claim is not ripe for judicial review, *see United States v. Roberson*, No. 18-10575, 2018 WL 3996538, at *2 (11th Cir. Aug. 20, 2018), and it will be denied for that reason.

Alternatively, this claim will be denied because this Court lacks jurisdiction to hear this claim. Although Petitioner brought his claim for jail credit pursuant to Section 2255, his claim attacks the execution—and not the validity—of his sentence. *See Collins v. Flournoy*, No. 14-459, 2016 WL 4154924, at *2 (N.D. Fla. June 30, 2016) (stating, when the petitioner challenged "the decision of the [Bureau of Prisons] [to deny] her jail credit on her federal sentence for the time she spent in state custody," that she was "challeng[ing] the execution of her

---

[7] This is binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding on all federal courts in the Eleventh Circuit).

17

sentence" (emphasis added)). Thus, Petitioner must instead bring this claim under Section 2241. *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008) ("[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241." (citing *Bishop v. Reno*, 210 F.3d 1295, 1304 (11th Cir. 2000))); *see United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000) ("A claim for credit for time served is brought under 28 U.S.C. § 2241 after the exhaustion of administrative remedies." (citing *Flanagan*, 868 F.2d at 1546)). However, "to the extent, if any, that [Petitioner's claim] is cognizable under § 2241, this Court has no jurisdiction because a § 2241 motion must be filed in the district of the prisoner's confinement," *Myrick v. United States*, No. 13-28, 2014 WL 652274, at *6 (S.D. Ga. Feb. 19, 2014) (citing 28 U.S.C. § 2241), which in this case is the Northern District of Ohio.

## IV. CONCLUSION

All four of Petitioner's claims fail. First, his jurisdictional challenge fails when construed as a challenge to this Court's subject matter jurisdiction because this Court had subject matter jurisdiction over Petitioner's criminal case. This challenge also fails when construed as a challenge to venue because Petitioner has waived that challenge. Second, his ineffective assistance claim fails because it is all based on two incorrect premises. Thus, defense counsel could not be

ineffective for the reasons Petitioner argues. Third, his excessive sentence claim fails because his sentence is not grossly disproportionate to the crime committed. Fourth, his claim for jail credit fails because it is not ripe for judicial review and, alternatively, this Court lacks jurisdiction to hear this claim.

For the reasons stated above, the Petition is due to be **DENIED**. A separate final judgment order will be entered.

**DONE** this the 7th day of January, 2019.

                                              _____
                                              **VIRGINIA EMERSON HOPKINS**
                                              Senior United States District Judge